# No. 24-615

IN THE

# United States Court of Appeals
# for the Second Circuit

ROBERT SAMPSON,

PLAINTIFF-APPELLANT,

—v.—

STONY BROOK UNIVERSITY, ET AL.,

DEFENDANTS-APPELLEES,
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
IN CASE NO. 2:22-CV-04490-JMA-AYS,
U.S. DISTRICT JUDGE JOAN M. AZRACK

## BRIEF OF PLAINTIFF-APPELLANT

Mary C. Vargas
Michael Steven Stein
STEIN & VARGAS, LLP
10 G Street NE, Suite 600
Washington, DC 20002
(240) 793-3185

Bridget A. Clarke
Andrew J. Dhuey
456 Boynton Avenue
Berkeley, CA 94707
(510) 528-7755

Charles Weiner
LAW OFFICE OF CHARLES WEINER
99 Lantern Drive, Suite 202
Doylestown, PA 18901
(267) 685-6311

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................ iv

JURISDICTIONAL STATEMENT ..............................................................1

INTRODUCTION .............................................................................1

STATEMENT OF THE ISSUES ....................................................................4

STATEMENT OF THE CASE ....................................................................5

I.   FACTUAL BACKGROUND ...............................................................5

II.  PROCEDURAL BACKGROUND ................................................. 15

     Sampson's July 29, 2022 Complaint and Motion for a Preliminary
     Injunction against Stony Brook ........................................................ 15

     August 4, 2022 Status Conference .................................................... 16

     August 29, 2022 Complaint and Motion for a Preliminary Injunction
     against NBME ....................................................................... 17

     Stony Brook's September 8, 2022 Opposition to Sampson's
     Preliminary Injunction ........................................................ 18

     October 6, 2022 Status Conference .................................................... 18

     December 2, 2022 Order Granting Preliminary Injunction against
     NBME ....................................................................... 18

     December 9, 2022 Status Conference ................................................ 19

     NBME Appeals from the Order Granting the Preliminary Injunction
     Against It; Settlement Efforts in the *Stony Brook* Case Reach an
     "Impasse" ....................................................................... 21

Oral Argument in NBME's Interlocutory Appeal, and This Court's Summary Order Vacating the Preliminary Injunction against NBME ................................................................................... 21

May 3, 2023 Status Conference in *Stony Brook* in Response to the Second Circuit's Summary Order ...................................................... 23

Orders Denying Attorneys' Fees and Dismissing the Case .............. 27

SUMMARY OF ARGUMENT ................................................................... 28

STANDARD OF REVIEW ........................................................................ 29

ARGUMENT ............................................................................................. 30

I.      SAMPSON IS A PREVAILING PARTY ENTITLED TO REASONABLE ATTORNEYS' FEES AND COSTS ..................... 30

        A.    A Judicially-Sanctioned Material Alteration of the Parties' Legal Relationship Is Required for Prevailing Party Status under the Applicable Fee-Shifting Provisions ......................... 30

              i.    Civil Rights Fee-Shifting Provisions ............................. 30

              ii.   Requirements for Prevailing Party Status ..................... 32

        B.    There Was the Requisite Material Alteration of the Legal Relationship of the Parties Here to Confer Prevailing Party Status on Sampson ................................................................. 33

        C.    There Was the Requisite Judicial Imprimatur Here to Confer Prevailing Party Status on Sampson ....................................... 35

              i.    The Stipulation and Order Is the Functional Equivalent of a Consent Decree ......................................................... 35

              ii.   The Evidence of Judicial Intent Regarding the Stipulation and Order Supports Finding Judicial Imprimatur Here . 40

II.   THE DISTRICT COURT ABUSED ITS DISCRETION IN
      DENYING FEES TO SAMPSON BASED ON THE RARELY-
      APPLIED "SPECIAL CIRCUMSTANCES" EXCEPTION ............. 43

      A.   An Extremely Strong Showing Is Required to Deny Fees to a
           Civil Rights Plaintiff Based on the "Special Circumstances"
           Exception ................................................................................... 43

      B.   By Failing to Raise the Issue, Stony Brook Did Not Satisfy Its
           Burden to Show "Special Circumstances," and the District
           Court Abused Its Discretion in Deciding the Issue
           *Sua Sponte* ................................................................................. 46

      C.   The District Court Abused Its Discretion by Relying on Two
           Clearly Erroneous Factual Findings in Concluding that "Special
           Circumstances" Were Present Here .......................................... 48

           i.    The Record Does Not Support the District Court's
                 Finding that Stony Brook Was an Innocent Third-Party
                 Caught in the Middle of a Dispute between Sampson and
                 NBME .......................................................................... 48

           ii.   The Record Does Not Support the District Court's
                 Finding that Sampson Did Not Take Legal Action
                 Against NBME in a Timely Manner ............................. 52

      D.   It Was Error to Deny a Fee Award to Sampson Based on His
           Attempts to Resolve His Dispute with NBME Short of
           Litigation ................................................................................... 54

      E.   It Was Contrary to the Policy Behind Civil Rights Fee-Shifting
           Statutes to Deny a Fee Award to Sampson .............................. 55

CONCLUSION ............................................................................................ 56

CERTIFICATE OF COMPLIANCE WITH WORD LIMIT ....................... 57

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Disability Ass'n, Inc. v. Chmielarz*, 289 F.3d 1315 (11th Cir. 2002) .. 38

*Annunziato v. The Gan, Inc.*, 744 F.2d 244 (2d Cir. 1984) ................... 48-50

*Brown v. Green 317 Madison, LLC*, 2014 U.S. Dist. LEXIS 40248
(E.D.N.Y. Feb. 4, 2014), *adopted by* 2014 U.S. Dist. LEXIS 39587
(E.D.N.Y. Mar. 25, 2014) ............................................................. 31

*Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and
Human Resources*, 532 U.S. 598 (2001) ................. 2-3, 28-29, 32, 36-37, 40

*Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*,
804 F.3d 178 (2d Cir. 2015) .................................................. 30, 50

*Dimartile v. Hochul*, 80 F.4th 443 (2d Cir. 2023) ....................................... 55

*Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734 (2d Cir. 2000) .............. 37

*Gierlinger v. Gleason*, 160 F.3d 858 (2d Cir. 1998) .................................. 55

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)....................................... 31-32, 55

*Hescott v. City of Saginaw,* 757 F.3d 518 (6th Cir. 2014) .......... 44-47, 52, 54

*Hines v. City of Albany*, 862 F.3d 215 (2d Cir. 2017).................................. 31

*Hous. Chronicle Publ'g Co. v. City of League City, Tex.,*
488 F.3d 613 (5th Cir. 2007) ....................................................... 44

*In re Masters Mates & Pilots Pension Plan*, 957 F.2d 1020 (2d Cir. 1992) 35

*In re N.Y. City Policing During Summer 2020 Demonstrations*,
2024 U.S. Dist. LEXIS 21657 (S.D.N.Y. Feb. 7, 2024) ............................. 35

*Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754 (1989) ............... 44

*Jankey v. Poop Deck*, 537 F.3d 1122 (9th Cir. 2008)............................. 44, 54

*John Allan Co. v. Craig Allen Co., L.L.C.*,
540 F.3d 1133 (10th Cir. 2008) .................................................... 52

*Kirk v. New York State Dep't of Educ.*, 644 F.3d 134 (2d Cir. 2011) ... 32, 35

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).......... 36-37

*LaRouche v. Kezer*, 20 F.3d 68 (2d Cir. 1994)............................................. 47

*Lefemine v. Wideman*, 568 U.S. 1 (2012) ..................................................... 43

*Lyte v. Sara Lee Corp.*, 950 F.2d 101 (2d Cir. 1991).............................. 34-35

*Newman v. Piggie Park Enters, Inc.*, 390 U.S. 400 (1968) ........................ 31

*Oguachuba v. INS*, 706 F.2d 93 (2d Cir. 1983)................................. 45-46, 54

*Perez v. Westchester County Dept. of Corr.*,
587 F.3d 143 (2d Cir. 2009) ........................................29, 34, 36-37, 40-41, 43

*Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*,
2018 U.S. Dist. LEXIS 10593 (S.D.N.Y. Jan. 23, 2018) ............................ 55

*Raishevich v. Foster*, 247 F.3d 337 (2d Cir. 2001) ............................... 43, 46

*Rice Servs., Ltd. v. United States*, 405 F.3d 1017 (Fed. Cir. 2005) ............. 39

*Riverside v. Rivera*, 477 U.S. 561 (1986)............................................... 31, 56

*Roberson v. Giuliani,* 346 F.3d 75 (2d Cir. 2003)........................ 1, 32, 36-37

*Sampson v. National Board of Medical Examiners*,
No. 22-cv-5120 (E.D.N.Y.) .................................. 17-18, 21, 24-25, 42-43, 52

*Sampson v. Nat'l Bd. of Med. Examiners*, 2022 U.S. Dist. LEXIS 217633
(E.D.N.Y. Dec. 2, 2022), *vacated on other grounds*, 2023 U.S. App. LEXIS
10535 (2d Cir. May 1, 2023) ..................6, 8, 14-15, 17-19, 33-34, 51-53, 55

*Sampson v. Nat'l Bd. of Med. Examiners*, 2023 U.S. App. LEXIS 10535 (2d Cir. May 1, 2023)........................................................ 6, 15, 17, 21-24, 42, 51

*Sanchez v. City of Austin*, 774 F.3d 873 (5th Cir. 2014) ............ 44, 47-48, 56

*Smith v. Fitchburg Pub. Sch.*, 401 F.3d 16 (1st Cir. 2005) .................... 39-40

*Smyth v. Rivero*, 282 F.3d 268 (4th Cir. 2002)........................................ 38-39

*Texas State Tchrs. Ass'n v. Garland Indep. Schl. Dist.*, 489 U.S. 782 (1989) ...................................................................... 32

*Torres v. Walker*, 356 F.3d 238 (2d Cir. 2004) ........................................... 40

*United States v. 27.09 Acres of Land*, 43 F.3d 769 (2d Cir. 1994) ... 45-46, 54

*Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299 (2d Cir. 2011) ...........................................29-30, 43, 45-46, 54

## STATUTES

28 U.S.C. § 1291.......................................................................................1
28 U.S.C. § 1331.......................................................................................1
28 U.S.C. § 2412(d)(1)(A) ................................................................... 45-46
42 U.S.C. § 1983 ........................................................................................ 49
42 U.S.C. § 1988........................................................................ 31, 44, 46, 49
42 U.S.C. § 1988(b) ................................................................................... 44
42 U.S.C. § 12205.............................................................2-5, 29, 31-32, 56
42 U.S.C. § 12132.............................................................................. 30, 49

## ACTS OF CONGRESS

Americans with Disabilities Act............................................................ *passim*
Americans with Disabilities Act, Title II........................................ 15, 30, 49
Equal Access to Justice Act ................................................................ 45-46
Rehabilitation Act, Section 504 ....................................................................1

## REGULATIONS

34 C.F.R. § 104.44(a) .................................................................................. 50

# JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 as this action was brought under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 e*t seq.*, and the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* JA 9, 27-29 (¶¶111, 125, 126). This Court has jurisdiction under 28 U.S.C. § 1291, and the "collateral order" doctrine. *See Roberson v. Giuliani*, 346 F.3d 75, 78-79 (2d Cir. 2003). On March 1, 2024, Plaintiff-Appellant Robert Sampson timely filed a notice of appeal from both the district court's Memorandum & Order entered February 7, 2024, denying attorneys' fees and costs (SPA 1-21[1]), and from its order dismissing the case entered February 22, 2024. JA 7 (02/22/2024 ORDER DISMISSING CASE). JA 602.

# INTRODUCTION

Plaintiff-Appellant Robert Sampson (Sampson), a joint MD/MBA student, now holds an MBA and is on track to be an MD by August 2024. His medical school, Defendant-Appellee Stony Brook University (Stony Brook), made Sampson's journey to this achievement especially difficult. Even though Stony Brook acknowledged that Sampson has substantial learning disabilities entitling him to accommodations under the ADA, it sought to expel him from medical school before he had the opportunity to obtain testing accommodations from the

---

[1] "SPA" cites are to the Special Appendix. "JA" cites are to the Joint Appendix.

National Board of Medical Examiners (NBME). NBME administers examinations required by Stony Brook for progression through medical school.

After Sampson filed suit against Stony Brook to maintain his status as an enrolled medical school student, and after much prodding from the district court, Stony Brook eventually consented to a stipulation that the court proposed, reviewed, revised, approved, and then entered as an order. That order required Stony Brook to allow Sampson two additional years to complete his medical studies. Although this was a complete victory for Sampson, the district court refused to award him attorneys' fees and costs as a prevailing party under 42 U.S.C. § 12205. According to the court, the order lacked the requisite "judicial imprimatur" under *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598 (2001). The court also ruled that, even if Sampson were a prevailing party, he was ineligible for a fee award because "special circumstances" would render such a fee award "unjust."

The district court erred on both counts. First, the very title of the order at issue – "Stipulation and Order" – which the district court "SO ORDERED", indicates no mere settlement. This court-issued order required Stony Brook, which had sought to expel Sampson in August 2022, to permit Sampson until August 2024 to graduate from medical school. The "Stipulation and Order" thus satisfied

the twin requirements of *Buckhannon*: material alteration of the parties' legal relationship and judicial imprimatur.

Second, no "special circumstances" would render a fee award here "unjust." The "special circumstances" exception to the rule that the prevailing party should ordinarily recover attorneys' fees requires an extremely strong showing to justify outright denial of fees to a civil-rights plaintiff such as Sampson. Stony Brook did not even assert a "special circumstances" argument in opposition to Sampson's fees motion, much less carry this heavy burden. And there simply were no circumstances here making the award of fees to Sampson unjust. On the contrary, awarding fees to Sampson would support Congress's intent in enacting section 12205 to encourage members of the private bar to take up meritorious cases on behalf of persons with disabilities. That intent would be especially supported here, where Sampson succeeded in obtaining the relief he sought as the result of a court order.

## STATEMENT OF THE ISSUES

This appeal presents the following issues:

1. Whether the district court erred in concluding that Sampson was not a "prevailing party" entitled to attorneys' fees and costs under 42 U.S.C. § 12205, notwithstanding the "Stipulation and Order" issued by the district court that required Stony Brook to "permit Mr. Sampson until August 12, 2024, to complete his medical education."

2. Whether the district court abused its discretion in reaching its "special circumstances" ruling – that Sampson was not entitled to attorneys' fees and costs even if he were a "prevailing party" because special circumstances would render such an award unjust – because its ruling rested on clearly erroneous and contradictory factual findings, as well as errors of law relating to the rarely applied "special circumstances" exception.

## STATEMENT OF THE CASE

Sampson brought this action against Stony Brook after it threatened to expel him from its medical school before he had the opportunity to take examinations required by Stony Brook with his needed testing accommodations. After obtaining an order from the district court allowing him two additional years to complete his medical studies at Stony Brook so that he could take the examinations with necessary accommodations – the relief he had sought in bringing this action — Sampson brought a motion for his attorneys' fees and costs under 42 U.S.C. § 12205. The Honorable U.S. District Judge Joan M. Azrack denied Sampson's motion on two grounds: (1) that he was not a "prevailing party" under section 12205; and (2) even if he were a "prevailing party," "special circumstances" made the award of such fees and costs "unjust." The district court subsequently dismissed the case as moot based on the order requiring Stony Brook to allow Sampson to remain enrolled in medical school through August 2024.

## I.    FACTUAL BACKGROUND

Sampson is a joint degree student (MD/MBA) at Stony Brook. He recently received his MBA from Stony Brook's College of Business, and is on track to receive an MD from Stony Brook's Renaissance School of Medicine in August 2024. JA 9-11 (¶¶1, 8-11); JA 56 (¶1-2). He is also a person with disabilities: Specific Learning Disorder with impairments in reading and Attention Deficit

Hyperactivity Disorder (ADHD). JA 12, 14 (¶¶17, 29); JA 56, 66 (¶¶4, 65-67).[2]

Since his second year of medical school, Sampson has received disability-related

accommodations from Stony Brook that have included extended time on

examinations. JA 12, 14, 16-17 (¶¶17, 29, 44-45).

Sampson is "twice exceptional," meaning that he is both extraordinarily

gifted in his many endeavors, and a person with substantial disabilities. JA 11-13

(¶¶11-25). From his earliest childhood, Sampson has worked harder and longer

than others to learn, struggling with reading, concentrating and processing

information. He relied on mitigating measures such as support from reading

specialists, tutors, and his family, who read aloud to him what he could not read

quickly enough himself. JA 12-13(¶¶18-24); JA 56-57 (¶¶4-8). He struggled to

complete exams within the time allotted, and was informally granted extended time

to finish exams during lunch or after school. *NBME*, 2022 U.S. Dist. LEXIS

217633 at *4. As a result of his hard work and use of mitigating measures,

---

[2] *See also Sampson v. Nat'l Bd. of Med. Examiners (NBME)*, 2022 U.S. Dist.
LEXIS 217633 at *59 (E.D.N.Y. Dec. 2, 2022), *vacated on other grounds*, 2023
U.S. App. LEXIS 10535 (2d Cir. May 1, 2023) (finding that Sampson "is disabled
within the meaning of the ADA" based on this diagnosis). As discussed in the
procedural history section *infra*, this Court vacated this preliminary injunction
order based solely on the need for additional fact-finding regarding Sampson's
status as an enrolled medical school student. *See* 2023 U.S. App. LEXIS 10535 at
*5. This Court did not otherwise find fault with Judge Azrack's extensive factual
findings.

Sampson was able to progress from elementary school through college. JA 14 (¶28); JA 57-58 (¶¶9, 13).

Sampson enrolled in Stony Brook's medical school in August 2015. JA 14 (¶29); JA 58 (¶14). He passed all of his medical school classes and received glowing reviews during his clinical rotations. JA 11-12 (¶¶12-14); JA 58 (¶¶17-18). He did not request testing accommodations during his first year of medical school, having been told at orientation that his classes would be Pass/Fail, and because he had expected that his usual mitigating measures would suffice. JA 14 (¶¶29-30); JA 58 (¶¶14-15).

The United States Medical Licensing Examination (USMLE) is a three-step examination administered by an outside entity called the National Board of Medical Examiners (NBME). JA 15 (¶36); JA 57 (¶22). For medical students, NBME permits only *currently enrolled* students to register for and take the Step exams, or to request testing accommodations. JA 26 (¶99, n.1); JA 68 (¶¶81-82).

Stony Brook has a policy whereby medical students must complete all requirements for the MD degree within seven years after the date of first enrollment in the medical school (hereafter, Seven-Year Policy). Significantly, Stony Brook's Seven-Year Policy is not mandated by any licensing entity or accrediting body. JA 84 (¶18). And per this policy, the seven-year requirement does not apply to joint-degree students like Sampson who are concurrently or

consecutively pursuing an MD and another degree such as an MBA. JA 24 (¶¶87-88); JA 67 (¶72); JA 202 (§2.5.3).

All allopathic physicians must pass each Step of the USMLE to gain licensure, but medical schools have varying policies regarding when and even if their students must take each Step of the USMLE in order to satisfy medical school requirements for the MD degree. JA 15 (¶36); JA 59 (¶22). Stony Brook, for example, requires that its medical students take and pass the Step 1 and Step 2 Clinical Knowledge exams. JA 59 (¶22); JA 199. Likewise, the timing of the Step exams in relation to a medical school's MD program is determined by the medical school, not by NBME. JA 82 (¶11).

In late November 2016, when Sampson was already almost halfway through his second year, Stony Brook for the first time raised concerns about his academic performance during his first year of medical school – this despite the fact that he had passed all his classes to date. JA 14, 16 (¶¶31, 42-44); JA 60 (¶¶28-30); *see also* JA 160. Stony Brook pointed to Sampson's performance on shelf exams. Shelf exams consist of retired USMLE questions. His grades were based in part on these exams. Sampson had not been able to read all of the shelf exam questions in the allotted time, but had nonetheless passed his classes on the strength of his academic performance. JA 16 (¶44); JA 58 (¶18); *NBME*, 2022 U.S. Dist. LEXIS 217633 at *12. At this point, Sampson applied for testing accommodations from

Stony Brook. Being allowed extra time to complete the shelf exams would enable him to read and understand all of the exam questions. JA 16-17 (¶¶44-45); JA 60 (¶¶30-31). Stony Brook approved Sampson's application based on the comprehensive neurocognitive evaluations he submitted, its personal interview of Sampson, and its conclusion that he had disabilities. Stony Brook granted Sampson time and a half (50 per cent additional time) on all testing at the medical school going forward, as well as a separate testing area and note-taking services. JA 17 (¶45); JA 60-61 (¶¶31-32).

On December 7, 2016, despite by then being aware of Sampson's disabilities and need for testing accommodations, Stony Brook informed Sampson that he must either (1) repeat the entire first year and a half of medical school (which he had already passed), or (2) take the Step 1 exam immediately (unlike his classmates, who were set to take Step 1 after their third year). If Sampson opted to take the Step 1 exam and failed it, Stony Brook would require him to repeat the first year and a half of medical school. JA 17 (¶46); JA 60-61 (¶¶27, 34-35); *see also* JA 160. After Sampson unsuccessfully appealed this directive to the dean of the medical school, Sampson registered to take the Step 1 exam and began researching how to apply to NBME for the testing accommodations that he would need to pass that exam. JA 17-18 (¶¶49-51); JA 61-62 (¶¶36-39); *see also* JA 160-161.

In the meantime, Stony Brook would not allow Sampson to continue with medical school classes; he was forced to take a leave of absence to comply with the school's directive that he take the Step 1 exam before his classmates if he did not want to repeat the first three semesters of medical school. JA 18 (¶52); JA 62 (¶40). His leave of absence lasted from February 2017 through August 2020. JA 62-64.

During this time period, NBME denied Sampson's applications for needed testing accommodations for the Step 1 exam six times. JA 19 (¶60); JA 62-64 (¶¶40-42, 45). These denials were despite extensive documentation of Sampson's disabilities submitted with each of his applications, and letters from Stony Brook to NBME that stated unequivocally that Sampson needed testing accommodations for the Step 1 exam. JA 19 (¶59); JA 62-63, 67 (¶¶40, 45-46, 74); JA 121-123; *see also* JA 186 (¶27).

While on his leave of absence, Sampson also invented two life-saving medical systems, and received his first patent for one of them.[3] And, with accommodations for his disabilities, he began taking business school classes as a

---

[3] The United States Patent and Trademark Office issued two patents to Sampson for potentially life-saving wearable devices that quickly detect alarming biometric changes in the user. *See* U.S. Patent No. 11,406,329 (issued Aug. 9, 2022); U.S. Patent No. 10,478,127 (issued Nov. 19, 2019) (available for viewing at https://ppubs.uspto.gov/pubwebapp/static/pages/ppubsbasic.html).

joint MD/MBA student, earning straight A's in his MBA program. JA 22 (¶¶74, 77); JA 65 (¶¶59, 61).

Despite these achievements, Sampson could not proceed in his medical studies. Sampson was trapped – he was forced to remain on leave until he took and passed Step 1, but he could not pass Step 1 without testing accommodations, and NBME had denied him those six times. He was left with little choice but to take the Step 1 examination in January 2020 without any accommodations. He failed the exam because he did not have sufficient time to read all of the questions. He thus was not given the opportunity to demonstrate his mastery of the material. JA 19-20 (¶61); JA 63 (¶47).

After learning that Sampson had failed the exam, Stony Brook notified him that he would be expelled from the medical school. Expulsion would be based on not passing the exam (without testing accommodations), and also because, by that time, it was not possible for Sampson to study for, take and pass the Step 1 and Step 2 exams, as well as complete his medical studies, in seven years. JA 20-21 (¶¶63, 71); JA 63-64 (¶¶48-56); JA 188 (¶33); JA 274.

In the course of the Zoom meeting where Sampson was told he would be expelled, he was also told that, while Stony Brook was aware of his disabilities, accommodations were not "the only way you could pass that exam," and that he was "not the first student who's ever had a learning disability and won't be the

last." After Sampson asked why Stony Brook was not going to give him the opportunity to continue to pursue the accommodations he needed for Step 1, he was told that he had "simply . . . refused to acknowledge that [NBME was] not going to give" him accommodations, and that he was not "the only person in the world who has this problem." JA 63-64 (¶¶49-55).

Sampson hired counsel to intervene on his behalf. They advised Stony Brook that dismissing Sampson under these conditions would be discrimination in violation of federal law. JA 124-131; JA 64 (¶57). Stony Brook relented, allowing Sampson to begin his third year of medical school. He began his third year in August 2020 and excelled, earning stellar performance reviews. JA 13-14 (¶¶72-73); JA 64-65 (¶¶58, 61); JA 277. Later that third year, the school's registrar's office certified that Sampson's expected graduation date was May 2023, which was beyond the August 2022 deadline for graduation claimed by Stony Brook per its Seven-Year Policy. JA 65 (¶60); JA 132.

In August 2020, Sampson underwent additional comprehensive educational testing by a highly regarded clinical neuropsychologist. He underwent this testing because NBME requires testing results to be less than three years old, and to further impress upon NBME his need for accommodations. Stony Brook deemed this additional testing "imperative." The testing confirmed that Sampson has significant learning disabilities which require testing accommodations in the form

of 100 per cent additional testing time (double time), a separate testing room, and extended breaks between exam segments. JA 22-23, 26 (¶¶78-83, 101); JA 65-66 (¶¶62, 64-68). Stony Brook granted Sampson these accommodations on medical school testing as a result. JA 24(¶84); JA 66 (¶69).

After Stony Brook hired a new dean for the medical school, in October 2021 the new dean informed Sampson that he must still graduate in seven years despite the fact that he had been re-enrolled at a time when, per Stony Brook, it was not possible for him to complete his medical school studies in seven years. JA 24 (¶86); JA 66-67 (¶¶70-71). In response, Sampson's counsel repeatedly communicated with the medical school, pointing out that per the Seven-Year Policy's own terms, that policy was not applicable to joint-degree students like Sampson; that Stony Brook had permitted him to resume classes in 2020 even though it knew by then that he could not complete medical school within seven years; and formally requesting as an accommodation that Stony Brook permit Sampson the time he needed to obtain the Step 1 accommodations that Stony Brook agreed were imperative for Sampson to show his knowledge rather than the extent of his disabilities. Stony Brook continued to point to its Seven-Year Policy. JA 21-25 (¶¶73, 75-78, 90, 92-95); JA 62, 67-68 (¶¶39, 75-78); JA 136-142, 144-145; JA 376 (¶24).

On April 1, 2022, Stony Brook informed Sampson that it would dismiss him from the medical school on August 12, 2022. JA 68 (¶78-79); JA 143. While the medical school administration moved to dismiss him, the faculty and preceptors who supervised Sampson were describing him as an "excellent student" who was "extremely dedicated to his patients" and an "asset to the team," and who displayed "medical knowledge and ability to assimilate this knowledge [that] was impressive for his level of training." JA 65 (¶61), 71-73.

In June 2022, NBME denied Sampson's request for testing accommodations for a seventh time. It did so despite having received Sampson's most recent, comprehensive educational testing results, as well as Stony Brook's certification that Sampson needed the accommodations that he was requesting. JA 26 (¶99); JA 67-68 (¶¶74, 82).

Despite many obstacles, Sampson successfully completed his third year of medical school. JA 56, 68 (¶¶1, 80). By this point, however, Sampson was out of options. Stony Brook would not permit him to complete his last 40 weeks of medical school until he took and passed Step 1; refused to give him time to assert his right to disability accommodations for the Step 1 exam; and was intent on enforcing its Seven-Year Policy against him despite the fact that the policy did not apply to him as a joint MD/MBA student. JA 56 (¶1); JA 376 (¶24). But he could not pass Step 1 without NBME providing his needed accommodations. *NBME*,

2022 U.S. Dist. LEXIS 217633 at **34-35. NBME would not allow him to register for the exam or even seek accommodations if he were not an enrolled medical school student. JA 68 (¶¶81-82); *see also NBME*, 2023 U.S. App. LEXIS 10535 at *5 n.3. Because Stony Brook would not allow him to complete his final weeks of medical school and was planning to expel him in August 2022, Sampson was left with no choice but to litigate if he wanted to keep alive his dream of becoming a physician. JA 68 (¶80).

## II.    PROCEDURAL BACKGROUND

### Sampson's July 29, 2022 Complaint and Motion for a Preliminary Injunction against Stony Brook

Sampson filed a complaint against Stony Brook on July 29, 2022, alleging violations of Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, based on Stony Brook's discriminatory application of its Seven-Year Policy despite the fact that, per its terms, the policy did not apply to Sampson as a joint MBA/MD student, and based on Stony Brook's threat to dismiss him from the program without allowing him the opportunity to obtain the testing accommodations he needed to take and pass the Step examinations. JA 9-10, 27-28, 30.

On the same date, Sampson filed an extensively documented motion for a preliminary injunction against Stony Brook, seeking to maintain his status as an enrolled medical student until he could take Step 1 with the necessary testing accommodations in place. JA 32-54; JA 2 (Dkt. Nos. 1-3).

~ 15 ~

**August 4, 2022 Status Conference**

At the outset of the August 4, 2022 status conference, counsel for Stony Brook indicated to the district court that Sampson had "run out of time" to take and pass the Step 1 exam because the seven years would be up on August 12, 2022. JA 407, 409. The district court had by then reviewed Sampson's complaint and motion for a preliminary judgment against Stony Brook. JA 406, 408. She previewed her opinion on the merits, stating that Sampson "sounds like . . . a promising young doctor," and asked "why is it such a big deal to give him" more time to complete his medical studies "under these circumstances?" Counsel for Stony Brook did not answer directly, replying instead that Stony Brook had "no control over" NBME. JA 415.

Because the court could not schedule a hearing on Sampson's pending preliminary injunction motion before the August 12 date when Stony Brook intended to expel Sampson, the court pressed the parties to agree to a "standstill" that would keep Sampson enrolled in medical school past that date. JA 409, 420. Stony Brook had told Sampson's counsel just the day before that it would not consent to such a request, but relented during this conference when the court urged it to do so. JA 376 (¶25); JA 418-420; JA 3 (Dkt. No. 7).

During this conference, Sampson's counsel explained that Sampson had not yet sued NBME because his counsel had recently issued a final demand letter to

NBME's counsel, with whom Sampson's counsel had a relationship from prior litigation against NBME. The demand letter asked NBME to reevaluate its June 2022 denial based on Sampson's most recent testing, done by a highly respected neuropsychologist. JA 410-411. The district court agreed that Sampson at that point should "at least give [NBME] a chance to review [Sampson's most recent testing results] and see if [NBME] come[s] to a conclusion before you would file suit" against NBME. JA 412.

**August 29, 2022 Complaint and Motion for a Preliminary Injunction against NBME**

On August 29, 2022, Sampson filed suit against NBME. *Sampson v. National Board of Medical Examiners*, No. 22-cv-5120 (E.D.N.Y.) (the *NBME* case). He sought injunctive relief to require NBME to provide testing accommodations ensuring that the Step examinations would measure Sampson's knowledge of medicine rather than the extent of his disabilities. Shortly thereafter, Sampson filed a motion for a preliminary injunction seeking such accommodations. *NBME*, 2022 U.S. Dist. LEXIS 217633 at **1, 30-31; *NBME*, 2023 U.S. App. LEXIS 10535 at **1-2.

The *NBME* case was designated a related case to this one; both were assigned to the Honorable Joan M. Azrack. JA 3 (Dkt. No. 11); JA 421, 431-432.

**Stony Brook's September 8, 2022 Opposition to Sampson's Preliminary Injunction**

On September 8, 2022, Stony Brook filed its opposition to Sampson's motion for a preliminary injunction, reaffirming its intention to apply its Seven-Year Policy against Sampson instead of giving him the time needed to get testing accommodations from NBME. Stony Brook asserted repeatedly in its opposition that Sampson would not be receiving a medical degree. JA 156, 165, 170, 175.

**October 6, 2022 Status Conference**

On October 6, 2022, the district court convened another status conference because of the imminent expiration of the then current stay (*see* JA 3 (Dkt. No. 7)), and because the following week in the related *NBME* case the same district judge would preside over the hearing on Sampson's motion for a preliminary injunction against NBME. The district court urged the parties to consent to a 60-day extension of the stay of both the proceedings and Sampson's status as an enrolled student. Stony Brook counsel was reluctant to do so, but "[p]ursuant to the Court's instruction," later agreed to the extension. JA 426-427; JA 315.

**December 2, 2022 Order Granting Preliminary Injunction against NBME**

In the related *NBME* case, on December 2, 2022, the district court granted Sampson's motion for a preliminary injunction, ordering NBME to provide Sampson's requested accommodations on the Step 1 exam: 100 per cent extended testing time (double time), a separate testing room, and extended breaks. *NBME*,

~ 18 ~

2022 U.S. Dist. LEXIS 217633 at **1, 63. The order contained extensive findings of fact based on a three-day evidentiary hearing. *Id.* at **1-30.

The district court found that Sampson could not "continue his medical training until he passes Step 1." *Id.* at *33. Analyzing applicable ADA provisions, the court found that Sampson had substantial impairments that constitute a disability for purposes of the ADA, namely with respect to reading and concentration, which are relevant to taking Step 1. *Id.* at **37-59.

The district court also found the requisite "irreparable harm," noting that Sampson would "again fail Step 1 if he [took] the exam without accommodations. Accordingly, he would not be able to progress to his final year of medical school unless he receives accommodations on Step 1." *Id.* at **33-34. Based on these facts, the district court concluded that unless Sampson was allowed "to take Step 1 with accommodations, his medical career" would "effectively end." *Id.* at **34-35. Indicating its belief that Stony Brook should allow Sampson to remain enrolled, the court noted that the balance of hardships favored Sampson because, without accommodations in place, he risked "losing the opportunity to progress in his medical training." *Id.* at *61.

**December 9, 2022 Status Conference**

One week after granting the preliminary injunction against NBME, the district court began another status conference in this case by saying: "As you

know,[4] I ruled on the [NBME] case and I was hopeful that you would have been having discussions about the timing of [Sampson's pending motion for a preliminary injunction against] Stony Brook . . . and how my decision in the [NBME] case affects that motion and the timing of when we deal with it." JA 431.

The parties indicated that they were working toward "reaching an agreement through a stipulation or consent decree which will resolve all material issues," and that per such "stipulation or consent decree, Stony Brook will agree that Mr. Sampson will be given until August 2024 within which to graduate" and "an opportunity to study for USMLE [S]tep 1 which he intends to take during the week of May 15, 2023. [¶] After [S]tep 1, Mr. Sampson will be allowed to commence his clinical rotations." JA 431-432. Per counsel, the "stay on Mr. Sampson's status as a student in good standing [at the medical school] would remain in place as long as the Court retains jurisdiction." JA 433. Again indicating the court's view that Sampson should have the opportunity to progress in his medical studies, the district court stated that it was "really pleased" with this "very good framework," and thanked counsel for this "excellent pathway forward." JA 434.

---

[4] The district court's statement is indicative of its understanding that defense counsel in both related cases were aware of what was happening in both cases.

**NBME Appeals from the Order Granting the Preliminary Injunction Against It; Settlement Efforts in the *Stony Brook* Case Reach an "Impasse"**

On December 30, 2022, in the related *NBME* case, NBME filed an interlocutory appeal seeking reversal of the order granting a preliminary injunction against it. *See NBME*, 2023 U.S. App. LEXIS 10535.

Back in this case, on January 31, 2023, Stony Brook filed a status report indicating that the parties had "reached an impasse" in their efforts to resolve the case. In light of NBME's interlocutory appeal,[5] the parties requested that the district court "defer any action in this matter, whether related to efforts to resolve the litigation or to [Sampson's] pending motion for a preliminary injunction [against Stony Brook], until the Second Circuit" ruled on the appeal. Stony Brook noted that the Second Circuit's ruling would inform "the parties' respective positions" as well as "the feasibility of resolving this matter, going forward." In the meantime, Stony Brook agreed to keep Sampson enrolled as a student. JA 316.

**Oral Argument in NBME's Interlocutory Appeal, and This Court's Summary Order Vacating the Preliminary Injunction against NBME**

On April 18, 2023, this Court heard oral argument in the appeal from the order granting a preliminary injunction against NBME. JA 318. Two days after oral argument, the district court entered *sua sponte* an order purporting to clarify for the Second Circuit panel "the procedural posture and status" of the *Stony Brook*

---

[5] *See supra* note 4.

case. It had come to the district court's "attention that during oral argument" the Second Circuit panel had inquired about "whether Sampson [was] subject to dismissal by Stony Brook for failing to complete his medical degree in seven years." The district judge sought to assure the Second Circuit that Sampson was not at risk of being dismissed from medical school because of the temporary stays extracted from Stony Brook by the district court at status conferences. JA 318-320.

On May 1, 2023, in a nonprecedential summary order, this Court reversed the order granting a preliminary injunction against NBME based on the lack of a developed record regarding Sampson's enrollment status at Stony Brook. *NBME*, 2023 U.S. App. LEXIS 10535 at * 5. The Court declined to consider the information about the *Stony Brook* case contained in the district court's order issued after oral argument. *Id*. at *4 n.1. Per this Court, Sampson had alleged "that Stony Brook has sought to dismiss him and has repeatedly stated that Sampson will not be granted an exception to the seven-year graduation requirement. So Sampson's alleged inability to progress in medical school depends not only on the outcome of this lawsuit, but also on the outcome of Sampson's lawsuit against Stony Brook. The district court erred in making a determination of harm that is contingent on the outcome of Sampson's separate legal proceeding against Stony Brook." *Id.* at *4. "[R]egardless of the outcome of the NBME case, Sampson cannot continue with medical school unless he *prevails* in his lawsuit against Stony

Brook." *Id.* at **4-5 (emphasis added). The summary order specified that on remand the district court could "reevaluate the motion for preliminary injunction against NBME in light of Sampson's potential termination from medical school by Stony Brook" and "of course also consider developments in the Stony Brook case." *Id.* at *5.

Regarding such developments, this Court noted that it appeared "that Sampson must be enrolled in medical school in order to take Step 1 and must pass Step 1 to complete his studies at Stony Brook"; that "*forbearance by Stony Brook, or a ruling in Sampson's favor in that case, is essential* to the district court's ability to award relief to Sampson in this case against NBME"; and that Sampson "cannot continue his medical studies at Stony Brook without passing Step 1." *Id.* at *5 n.3 (emphasis added).

**May 3, 2023 Status Conference in *Stony Brook* in Response to the Second Circuit's Summary Order**

On the same day as the Second Circuit's May 1, 2023 summary order, Stony Brook informed the district court that it was only willing to keep Sampson enrolled as a student "pending the results of" his May 15, 2023 Step 1 exam, "should he proceed with the exam." JA 321. Sampson was registered to take the Step 1 exam the week of May 15, 2023, but would have to take it without any accommodations due to the preliminary injunction against NBME having been vacated. JA 321: JA 442-443; *NBME*, 2023 U.S. App. LEXIS 10535 at *5.

On May 3, 2023, the district court held a status conference, beginning as follows: "THE COURT: . . [A]s I'm sure you're aware,[6] the [Second] Circuit's decision [in *NBME*, 2023 U.S. App. LEXIS 10535] turned largely on the status of this case. *I wanted this conference* because I was hoping that we could reach a goal of *the irreparable harm issue that was identified by the [Second] Circuit in the opinion*." JA 439 (emphasis added). The district court then noted that at the December 9, 2022 status conference, the parties had indicated that they had "reached a provisional agreement" to permit Mr. Sampson to take Step 1 on May 15 and, if he passed, to have until August 24, 2024 to graduate. JA 438-440. But Stony Brook had reversed itself in response to the vacatur of the preliminary injunction in the *NBME* case, now only offering to keep "Sampson enrolled pending the results of the [S]tep one exam" should he take it (without testing accommodations). JA 440. The court opined that such an offer would not suffice "to address the Circuit's irreparable harm analysis. . . . [I]t seems to me the [Second] Circuit concluded that Sampson hadn't demonstrated irreparable harm because regardless of the outcome of the NBME case, he couldn't continue with medical school unless he *prevailed* in the Stony Brook case . . . Subject to your agreement to *the proposal I'm going to make*, . . . *I plan to reissue the preliminary*

---

[6] *See supra* note 4.

*injunction in the NBME case* once NBME and Sampson have had an opportunity to be heard. I think this path will both serve Stony Brook's interest in finality and also address the irreparable harm issue, allowing the Sampson case against NBME to proceed to a merits determination." JA 440-441 (emphasis added).

The district court's proposal was that the parties "agree to the same provisional terms that you outlined in December, namely that Mr. Sampson will remain a student in good standing through August, 2024 and that he'll be permitted to proceed with his clinical studies once he passes [S]tep one. If he's unable to complete his medical requirements within that time, he'll be subject to dismissal. So that's my proposal, so I'm listening." JA 441. According to the court, "the only way [Sampson is] going to get the [Step exam] accommodations is if we proceed with my plan." JA 443.

After counsel expressed being "on board" with the court's plan, the court said: "Then that's it, that's the agreement, so let's put it on the record right now, because then I'm going to schedule a conference tomorrow morning with NBME and" Sampson's counsel, "so we can move the ball" because May 15, the date of the Step 1 exam that Sampson was then registered to take, "is soon upon us. So can you either put this on the record right now or get me something in the next hour?" JA 443.

~ 25 ~

After some back and forth about attorneys' fees, the district court interjected, "I think what's important here is that this young man get to take this exam on May 15th, for which he's worked for years and now has studied. So figure out this fee situation because that would be horrendous for that to get in the way of the plan I'm proposing." JA 444-445. The district court suggested to Stony Brook's counsel that she tell her client to put the attorneys' fee issue "on the back burner and leave it up to the judge" because "[t]ime is of the essence." Whether Sampson is "prevailing under this settlement is "left up to me . . . so the settlement can say no fees and it be left up to me." JA 445. The district court then gave counsel an hour to finalize the terms of the agreement and adjourned the conference. JA 446.

When the status conference resumed later that morning, the parties had reached agreement on three out of four proposed terms, the missing term being that Sampson take the Step 2 exam by October 15, 2023. JA 447-448. The court told Sampson's counsel, "I think you need to quit while you're ahead," and that the three-term stipulation "is a *huge victory* just to get this . . ." JA 451 (emphasis added). The court then weighed in on how the issue of attorneys' fees should be worded in the stipulation and, once satisfied with what the parties came up with, said, "That's how it should read." JA 452. After all that, the Court directed counsel to read the stipulation into the record and then to "file that stipulation on the record immediately after this conference . . . in the next hour." JA 453. When asked

whether the filing should be "filed as part of a letter or a proposed order," the court selected "a proposed order." JA 454. Neither counsel objected to the district court's plan.

Later that day, the district court issued a "STIPULATION AND ORDER" (hereafter, Stipulation and Order) with the case's caption and containing the three terms recited at the status conference, as follows:

"On this date, May 3, 2023, the parties stipulate as follows:

1. Stony Brook University will permit Mr. Sampson until August 12, 2024, to complete his medical education.

2. Mr. Sampson cannot proceed to Phase III[7] of his medical education until he takes and passes Step 1.

3. This stipulation does not include fees.

DATED May 3, 2023                    SO ORDERED

                                      /s/ JMA_____
                                      The Honorable Joan M. Azrack"

JA 323; JA 4-5 (Dkt. No. 25 STIPULATION AND ORDER).

**Orders Denying Attorneys' Fees and Dismissing the Case**

On February 7, 2024, the district court issued an order denying Sampson's fee petition. SPA 1-21. No hearing was held on the motion. The denial was based

---

[7] "Phase III" refers to clinical rotations. JA 441.

~ 27 ~

on two grounds: (1) the May 3, 2023 Stipulation and Order "lacks judicial imprimatur" for purposes of "prevailing party" status, citing *Buckhannon*, 532 U.S. 598 (SPA 11-16); and (2) even if Sampson were a "prevailing party, special circumstances warrant denying" Sampson's fee petition (SPA 17-21). The order denying attorneys' fees did not analyze or make any findings as to the reasonableness of Sampson's fee request.

On February 22, 2024, the district court dismissed the case as moot based on: the Stipulation and Order allowing Sampson to remain in medical school through August 12, 2024 (JA 323); Sampson counsel's statement in the brief in support of his fee petition that he had obtained "all of the relief that [he] sought in this case" (JA 358); the order denying Sampson's fee petition (SPA 1-21); and Sampson's confirmation via a February 20, 2024 letter to the district court that he was not seeking damages against Stony Brook (JA 601). JA 7 (02/22/2024 ORDER DISMISSING CASE).

Sampson timely filed his notice of appeal on March 1, 2024. JA 602.

## SUMMARY OF ARGUMENT

The Stipulation and Order provided all the relief Sampson sought in this litigation, contains all of the terms of the agreement that the district court brokered between Sampson and Stony Brook, and was filed, signed and "so ordered" by the district court. It is the functional equivalent of a consent decree. As such, and per

the Supreme Court in *Buckhannon*, the Stipulation and Order confers "prevailing party" status on Sampson, making him entitled to attorneys' fees. And there simply are no "special circumstances" here that would make the award of fees to Sampson unjust. In fact, denying fees here would be contrary to the policy behind the ADA and other civil rights fee-shifting statutes. It was thus error for the district court to deny Sampson his reasonable fees and costs.

## STANDARD OF REVIEW

The ADA provides that a court "may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. "Prevailing party" is a "legal term of art" that has been interpreted "consistently" in "numerous statutes." *Buckhannon*, 532 U.S. at 601-03 & n.4 (case brought under the ADA). Whether Sampson is a "prevailing party" under 42 U.S.C. § 12205 "is a question of law that [this Court reviews] *de novo*." *Perez v. Westchester County Dep't of Corr.*, 587 F.3d 143, 149 (2d Cir. 2009).

Whether it was proper for the district court to deny Sampson a fee award based on "special circumstances" making such award "unjust" is reviewed for abuse of discretion. *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 303-04 (2d Cir. 2011). In the context of the "special circumstances" exception, a "district court abuses its discretion when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or

(2) its decision – though not necessarily the product of a legal error or a clearly erroneous factual finding – cannot be located within the range of permissible decisions." *See id.* at 303.[8]

## ARGUMENT

### I. SAMPSON IS A PREVAILING PARTY ENTITLED TO REASONABLE ATTORNEYS' FEES AND COSTS

#### A. A Judicially-Sanctioned Material Alteration of the Parties' Legal Relationship Is Required for Prevailing Party Status under the Applicable Fee-Shifting Provisions

##### i. Civil Rights Fee-Shifting Provisions

Sampson brought this action against Stony Brook under Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II requires universities to make reasonable modifications for a student's known disability unless such modification would result in an undue burden or a fundamental alteration of the program. *See Dean v. Univ. at Buffalo Sch. Of Med. & Biomedical Scis.*, 804 F.3d 178, 186-87 (2d Cir. 2015).

---

[8] Throughout this brief, internal quotation marks are omitted except where relevant to include them.

In an ADA action, the "prevailing party" is entitled to "a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205; *see also Brown v. Green 317 Madison, LLC*, 2014 U.S. Dist. LEXIS 40248 at *5 (E.D.N.Y. Feb. 4, 2014), *adopted by* 2014 U.S. Dist. LEXIS 39587 (E.D.N.Y. Mar. 25, 2014) (42 U.S.C. § 1988 allows for the award of fees under various civil rights statutes, including the ADA). Section 12205 and other civil rights fee-shifting statutes, such as 42 U.S.C. § 1988, further the mandate of the ADA and other civil rights legislation by ensuring "effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Civil rights laws "depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which [those] laws contain." *Hines v. City of Albany*, 862 F.3d 215, 222 (2d Cir. 2017). Because an ADA plaintiff who obtains relief in a lawsuit is vindicating those important policies, Congress has recognized that such a plaintiff "does so not for himself alone but also as a private attorney general." *Riverside v. Rivera*, 477 U.S. 561, 575 (1986). If ADA plaintiffs "were routinely forced to bear their own attorney's fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts." *Newman v. Piggie Park Enterprises, Inc*., 390 U.S. 400, 402 (1968).

### ii. Requirements for Prevailing Party Status

The "touchstone" requirement for establishing "prevailing party" status per section 12205 is "the material alteration of the legal relationship of the parties." *Tex. State Teachers Ass'n v. Garland Indep. Schl. Dist.*, 489 U.S. 782, 792-93 (1989). This "change in the legal relationship of the parties" must be "judicially sanctioned," which means that there must be "the necessary judicial *imprimatur* on the change" in that legal relationship. *See Buckhannon*, 532 U.S. at 605 (emphasis in original). Judgments and consent decree have the requisite judicial sanction (*id.* at 604), but other types of judicial action "can support an award of attorney's fees, so long as such action carries with it sufficient judicial imprimatur." *Roberson*, 346 F.3d at 81. And to be material, the "change in the legal relationship" between the parties must be enduring, *i.e.*, the plaintiff must "not leave the court empty handed." *See Kirk v. New York State Dep't of Educ.*, 644 F.3d 134, 137-38 (2d Cir. 2011).

"If the plaintiff has succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award of some kind." *Tex. State Teachers Ass'n*, 489 U.S. at 791-92. "This is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is reasonable." *Hensley*, 461 U.S. at 433.

**B.     There Was the Requisite Material Alteration of the Legal Relationship of the Parties Here to Confer Prevailing Party Status on Sampson**

In its order denying Sampson's fee petition, the district court gave short shrift to the issue of "material alteration of legal relations," declining to analyze the issue because Stony Brook and Sampson both agreed that "material alteration" was present. SPA 11 (n.3). But analyzing this issue is a powerful indicator of Sampson's prevailing party status because the material alteration here came about as a result of judicial imprimatur in the form of the Stipulation and Order.

The parties started the May 3, 2023 status conference with no agreement in place and no order providing relief to Sampson. Up until this Court's vacatur of the preliminary injunction against NBME, Stony Brook had agreed to keep Sampson enrolled only pending litigation-related events.[9] As of the morning of the

---

[9] Before May 1, 2023, Stony Brook agreed to stay action on Sampson's status as an enrolled student four times. Stony Brook agreed to the first three stays at the strong urging of the district court. First was a stay until the district court could schedule a hearing on Sampson's pending motion for a preliminary injunction against Stony Brook, after the court previewed its opinion that Sampson should be allowed more time to complete his medical studies (JA 406-409, 415, 418-420; JA 3 (Dkt. No. 7)); second, a 60-day extension of that first stay made "[p]ursuant to the Court's instruction" due to preliminary injunction proceedings in the *NBME* case (JA 426-427; JA 315); and third, after the grant of the preliminary injunction against NBME, a stay for "as long as the Court retains jurisdiction" (JA 433-434), consistent with Judge Azrack's finding in the *NBME* case that Sampson should have the opportunity to progress in his medical studies. *See NBME*, 2022 U.S. Dist. LEXIS 217633 at *61. After NBME appealed the preliminary injunction order, Stony Brook walked back the third stay, agreeing in a fourth stay only to keep Sampson enrolled until this Court ruled on NBME's appeal. JA 316.

conference, Stony Brook was only offering to keep Sampson enrolled "pending the results of" his May 15, 2023 Step 1 exam, if he chose to take it without accommodations.[10] JA 321. Once the Stipulation and Order was issued by the district court later that day, Stony Brook could no longer legally expel Sampson from medical school prior to August 12, 2024. *See Perez,* 587 F.3d at 149-50 (finding material alteration of the legal relationship where the defendant "is now legally incapable of acting as it did before the entry of the Order" and "cannot now do so without violating *a Court order*") (emphasis in original).

The alteration in the parties' legal relationship caused by the Stipulation and Order was material. Sampson brought this lawsuit to enjoin Stony Brook from dismissing him from medical school and, more particularly, from enforcing its Seven-Year Policy in discriminatory fashion against him. JA 30. And, as the order denying the fee petition acknowledges, the Stipulation and Order "allowing [Sampson] to remain enrolled at Stony Brook until August 12, 2024 – two years past the dismissal date under the Seven-Year-Graduation Policy – provided [Sampson] the benefit he sought in this case . . ." SPA 11 (n.3). *See Lyte v. Sara*

---

[10] Stony Brook's pending-the-results-of-the-exam offer was a non-offer. Under its terms, Sampson would either take the exam without his needed accommodations and fail it, or Sampson would elect not to take the exam because it would be futile to do so without accommodations. *See NBME*, 2022 U.S. Dist. LEXIS 217633 at *34 (Sampson would "again fail Step 1 if he takes the exam without accommodations"). In either scenario, Stony Brook would expel him shortly after the week of May 15, 2023. And this offer was made May 1, 2023. JA 321.

*Lee Corp.*, 950 F.2d 101, 104 (2d Cir. 1991) (to determine if a settling plaintiff is a "prevailing party," identify the relief sought and compare it with the relief obtained).

The benefit Sampson achieved from this lawsuit has also been enduring. Sampson did not "leave the courthouse empty handed," and no judicial action or other events have undone the results achieved in this case as a result of the Stipulation and Order. *See Kirk,* 644 F.3d at 137-38. Instead, when the district court subsequently dismissed the case as moot based in part on the Stipulation and Order "allowing Sampson to remain enrolled in medical school," the order of dismissal did not undo that order in any fashion. JA 7 (02/22/2024 ORDER DISMISSING CASE).

**C.  There Was the Requisite Judicial Imprimatur Here to Confer Prevailing Party Status on Sampson**

> **i.  The Stipulation and Order Is the Functional Equivalent of a Consent Decree**

Although not labeled as such, the Stipulation and Order has the defining characteristics of a consent decree: "a settlement that contains an injunction." *See In re Masters Mates & Pilots Pension Plan*, 957 F.2d 1020, 1025 (2d Cir. 1992); *see also In re N.Y. City Policing During Summer 2020 Demonstrations*, 2024 U.S. Dist. LEXIS 21657 at *36 (S.D.N.Y. Feb. 7, 2024) ("An agreement need not be formally designated as a consent decree for it to still operate as such."). Per the

Supreme Court and this Court, consent decrees and similar judicially-sanctioned agreements between the parties that provide prospective relief have sufficient judicial imprimatur to confer prevailing party status. *See Buckhannon*, 532 U.S. at 604; *Roberson*, 346 F.3d at 81.[11]

In *Perez*, 587 F.3d at 143, this Court found judicial imprimatur with respect to a "so-ordered" settlement agreement that, like the Stipulation and Order, was not labeled a consent decree. The settlement's terms provided prospective injunctive relief, specifically directing the defendant "to provide Halal meat to Muslim inmates who request a Halal diet as often as it provides Kosher meat to Jewish inmates who request a Kosher diet." *Id.* at 150. The "Order of Settlement" did "not explicitly provide for the retention of jurisdiction", but it did "incorporate the terms of the [parties'] agreement." *Id.* at 150, 151 n.6.

This Court held that the so-ordered settlement in *Perez* "bore the imprimatur of the District Court" because it was part of an order that "explicitly incorporates the terms of" the parties' settlement. *Id.* at 152-53. The Court applied the reasoning from the Supreme Court's decision in *Kokkonen v. Guardian Life Ins. Co. of Am.*,

---

[11] The fact that the Stipulation and Order did not involve a ruling on the merits is of no consequence. No merits determination is required for a consent decree to confer prevailing party status. *See Buckhannon*, 532 U.S. at 604 (although not "on the merits" and not necessarily including "an admission of liability by the defendant," "settlement agreements enforced through a consent decree" have the requisite judicial imprimatur).

which held that where an order "'incorporate[s] the terms of [a] settlement agreement . . . , a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.'" 587 F.3d at 151 (quoting *Kokkonen*, 511 U.S. 375, 381 (1994)); *see also Buckhannon*, 532 U.S. at 604 n.7 ("federal jurisdiction to enforce a private contractual settlement" could exist where "the terms of the agreement are incorporated into the order"). *Perez* also noted that this Court had previously held in *Roberson* that "'[a] court's responsibility to ensure that its orders are fair and lawful stamps an agreement that is made part of an order with judicial imprimatur.'" 587 F.3d at 152 (quoting *Roberson*, 346 F.3d at 83); *see also Geller v. Branic Int'l Realty Corp*., 212 F.3d 734, 737 (2d Cir. 2000) ("when a district court 'so orders' a stipulated settlement, it" accepts the clear obligation "to enforce the stipulation that it has approved"). The *Perez* court concluded that this "ongoing inherent authority" makes such orders "indistinguishable from consent decrees for the purposes of *Buckhannon*." 587 F.3d at 152.

Here, the terms of the agreement between Sampson and Stony Brook were proposed, reviewed, revised, and approved by the district judge. At the judge's direction, the terms were incorporated in their entirety into a proposed order. JA 440-454. The judge then crossed out the "proposed," and signed and "so ordered" it. And the Stipulation and Order provided prospective relief to Sampson – his

enrollment at the medical school through August 2024. JA 323; JA 7 (Dkt. No. 25 STIPULATION AND ORDER). *See Am. Disability Ass'n v. Chmielarz,* 289 F.3d 1315, 1320 (11th Cir. 2002) ("the court's order specifically approving the terms of the settlement are, for these purposes, the functional equivalent of the entry of a consent decree"). While concise, per the district judge, the Stipulation and Order "provided [Sampson] the benefit he sought in this case" by allowing him "to remain enrolled at Stony Brook" two years after the date that Stony Brook had told him he would be expelled per its Seven-Year Policy. SPA 11 (n.3).[12] In sum, there can be no doubt of judicial imprimatur here where the settlement was entirely brokered and shaped by the judge, and embodied in her order at her direction.

In its subsequent order denying Sampson's fee petition, the district court cited three cases for the proposition that "the mere fact that the Court 'So Ordered' the parties' Stipulation is not dispositive." SPA 14-15. All are readily distinguishable from this case. First, in *Smyth v. Rivero,* 282 F.3d 268 (4th Cir. 2002), the plaintiffs, who received aid under a welfare program, challenged the defendant state department of social services' new paternity identification policy which had reduced or eliminated their benefits under the program. *Id.* at 271-72. The plaintiffs unsuccessfully pinned their prevailing party status in part on what

---

[12] The Stipulation and Order did not dismiss the case, but it was incorporated by reference into the February 22, 2024 "ORDER DISMISSING CASE." JA 7.

they labeled an "agreement" that was later referenced in the order dismissing the case as moot. *Id.* at 278-79, 284-85. This "agreement" with defense counsel was reached during a private telephone conversation that did not include the district court. *Id.* at 273. Per its terms, the plaintiffs consented to continue the date of a hearing on their pending summary judgment motion, and the defendant agreed not to seek repayment of program benefits paid to the plaintiffs through the new date for the hearing. *Id.* at 273. The Fourth Circuit noted this "agreement" was not "a settlement of any of [plaintiffs'] claims" – in fact, the agreement did not provide the injunctive relief that the plaintiffs sought in the case. And the order dismissing the case which reached back to reference this "agreement" did not incorporate it. *Id.* at 278-79.

Second, in *Rice Servs., Ltd. v. United States*, 405 F.3d 1017 (Fed. Cir. 2005), the order at issue retroactively directed the defendant to provide remedial action to the plaintiff that the defendant had already "substantially" and "voluntarily" provided. Indeed, the case was "essentially moot" by the time the order was issued, and thus "even if the order changed the legal relationship of the parties, the change was not material." As such, the order could not confer prevailing party status. *Id. at* 1019-20, 1027 & n.6.

Finally, in *Smith v. Fitchburg Pub. Sch.*, 401 F.3d 16 (1st Cir. 2005), the "orders and rulings" at issue did not provide judicial imprimatur sufficient to

confer prevailing party status to the plaintiff because they were primarily procedural in nature, and did not provide the ultimate relief that the plaintiffs sought in the case. Instead, plaintiff obtained that relief in a subsequent private settlement with the defendant. The terms of that private settlement agreement were not part of those earlier "orders and rulings," nor incorporated into any subsequent order. Instead, the pre-settlement "orders and rulings" merely "hastened the final resolution of [plaintiff's] claim by private settlement." *Id.* at 19-21, 26-27.

### ii. The Evidence of Judicial Intent Regarding the Stipulation and Order Supports Finding Judicial Imprimatur Here

In its order denying Sampson's fee petition, the district court stated that it "did not intend to place its imprimatur" on the Stipulation and Order, citing this Court's decision in *Torres v. Walker,* 356 F.3d 238, 244 n.6 (2d Cir. 2004) ("*Buckhannon* requires . . . some evidence that a district court intended to place its 'judicial imprimatur' on the settlement"). SPA 14. But this Court has since clarified that "[w]hile a district judge's own opinion as to whether or not [her] actions provide imprimatur" may "shed light as to how ambiguous actions should be understood," the judge's opinion "cannot be controlling." *Perez*, 587 F.3d at 153 n.8. Regardless, there is no such ambiguity here. Instead, "there is ample evidence in the instant case that the District Court intended to place its judicial imprimatur" on the parties' agreement. *Id.* at 152.

In *Perez*, the district judge "actively urged settlement, and made it clear that he felt that the law was on the Plaintiffs' side." He discussed "ways to memorialize the agreement" short of labeling it a consent decree (since the defendant had "expressed opposition to entering a consent decree"). *Id.* at 146-47. Once the parties had reached an agreement, the district judge "reviewed and revised the settlement agreement with the parties present" (including by amending "the caption of the document to reflect that it was an 'Order of' Settlement'"), and "'so-ordered' the settlement." *Id.* at 148. The *Perez* Court emphasized the judge's "extensive involvement and close management" and the fact that he "pressed" making "the agreement part of an enforceable stipulation." *Id.* at 152-53.

Here, the district judge similarly sought an enforceable agreement from the parties with the ultimate goal of enabling this "promising young doctor" to take the May 15, 2023 Step 1 exam with his needed accommodations so that he could graduate from medical school. *See* JA 415; JA 434: JA 440-454. The district judge "so ordered" the Stipulation and Order "to ensure that the parties' Stipulation was memorialized and placed on the record." SPA 13. The judge sought, and entered as an order, the parties' resulting stipulation because she "plan[ned] to reissue the preliminary injunction in the NBME Case." JA 440-441. That was why she "wanted this conference." In order to reissue the preliminary injunction, she first needed to address this Court's "analysis of irreparable harm in the [related] NBME

Action." JA 439; SPA 13. This Court's analysis of the irreparable harm issue was that "regardless of the outcome of the NBME case, Sampson cannot continue with medical school unless he *prevails* in his lawsuit against Stony Brook." *NBME*, 2023 U.S. App. LEXIS 10535 at **4-5 (emphasis added); *see also* SPA 20-21 (the Stipulation was "so ordered" because of "the uncertainty as to how concrete the Medical School's promise [to keep Sampson enrolled] would have to be to address the irreparable harm concern raised by the Second Circuit in the NBME Action").

So at the beginning of the May 3, 2023 conference, the district judge immediately presented her "proposal" for terms for an agreement that would establish Sampson as having prevailed, noting that what Stony Brook was then offering Sampson would not suffice. JA 440-441. Once satisfied with the terms, she directed the parties to "file that stipulation on the record immediately after this conference . . . in the next hour." JA 452-453. She then elected to sign the proposed Stipulation and Order, to strike "proposed," and to issue the order in that form. JA 323. Her acknowledged intent was that "this young man get to take th[e Step 1] exam on May 15" with testing accommodations (JA 444-445), *i.e.*, that Sampson prevail both in this case (via an enforceable order maintaining his medical school enrollment through August 24), and then in the related *NBME* case

(via a re-issued preliminary injunction granting Sampson's needed testing accommodations).[13]

## II. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING FEES TO SAMPSON BASED ON THE RARELY-APPLIED "SPECIAL CIRCUMSTANCES" EXCEPTION

### A. An Extremely Strong Showing Is Required to Deny Fees to a Civil Rights Plaintiff Based on the "Special Circumstances" Exception

A "prevailing party" should "ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Lefemine v. Wideman*, 568 U.S. 1, 5 (2012). Although the standard for review for denial of fees based on "special circumstances" is nominally for abuse of discretion (*see Vincent*, 651 F.3d at 303), this and other courts have emphasized that the ordinary course is to award fees to the prevailing plaintiff – particularly in cases such as this one brought under civil rights statutes. *See Raishevich v. Foster*, 247 F.3d 337, 344 (2d Cir. 2001) ("discretion" to deny attorneys' fees "is narrowed by a presumption that successful civil rights litigants should ordinarily recover attorneys' fees").

---

[13] The district court's order denying fees asserted that Stony Brook's agreements to maintain Sampson's enrollment during the litigation were evidence of the Stipulation and Order's lack of imprimatur. SPA 12; *see supra* notes 9, 10. But these short-term stays did not provide the ultimate relief that Sampson sought and achieved in this lawsuit. There was no agreement providing such relief prior to the Stipulation and Order. *See supra* Part I.B.; *see also Perez*, 587 F.3d at 150 ("Whether the [defendant's] initial decision to [provide the relief sought] was voluntary or not is thus inconsequential, as it can no longer freely reverse that decision.").

In fact, there must be an *extremely strong showing* to justify outright denial of fees to a civil-rights plaintiff based on the special circumstances exception, as the Fifth Circuit has explained:

> The special-circumstances exception is a narrow carve-out of the general rule that prevailing civil-rights plaintiffs should be awarded fees. It is true that the plain language of the statute grants district courts discretion to determine whether to award the prevailing party a reasonable attorney's fee, *see* 42 U.S.C. § 1988(b) (stating that a court "may" award fees "in its discretion"), but the judicial gloss on § 1988, and its legislative history, have constrained that discretion, in most cases converting the statute's "may" into a "must." Indeed, "in [the] absence of special circumstances a district court not merely 'may' but must award fees to the prevailing plaintiff." *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761, 109 S. Ct. 2732, 105 L. Ed. 2d 639 (1989) (interpreting Title VII's nearly identical fee provision). This court has held that, "absent special circumstances, a prevailing plaintiff should be awarded section 1988 fees *as a matter of course*." *Cruz*, 762 F.2d at 1233 . . . . This court has further emphasized that "[b]ecause Congress believed that the incentive of attorney's fees was critical to the enforcement of the civil rights laws, section 1988 requires *an extremely strong showing of special circumstances* to justify a denial of fees." *Hous. Chronicle Publ'g Co. v. City of League City, Tex.*, 488 F.3d 613, 623 (5th Cir. 2007) . . . .

*Sanchez v. City of Austin*, 774 F.3d 873, 880 (5th Cir. 2014) (emphasis in original); *see also Hescott v. City of Saginaw*, 757 F.3d 518, 523, 525 (6th Cir. 2014) ("courts have made clear that special circumstances should not be easily found" and it is "extremely rare" to deny fees on this basis); *Jankey v. Poop Deck*, 537 F.3d 1122, 1130-31 (9th Cir. 2008) (discretion to deny a prevailing ADA plaintiff fees "is limited", and "recovery is the rule rather than the exception").

~ 44 ~

In line with this stringent standard of review, it is rare to find a special circumstance justifying the denial of fees. *See, e.g., Hescott*, 757 F.3d at 525 ("we have never (to our knowledge) found a 'special circumstance' justifying the denial of fees" and "it is extremely rare to deny fees based on special circumstances in other circuits as well"). Indeed, this Court has affirmed the denial of fees based on "special circumstances" only twice in published opinions, and only under 28 U.S.C. § 2412(d)(1)(A), the fee-shifting provision of the Equal Access to Justice Act ("EAJA"). *Vincent*, 651 F.3d at 302-04.

In the first such case, *Oguachuba v. Immigration & Naturalization Service*, 706 F.2d 93 (2d Cir. 1983), the Second Circuit held that the plaintiff's "extraordinary persistence in evading the lawful efforts of the INS to deport him to Nigeria, his flagrant contempt for United States law and the fact that his own decision not to acquiesce in deportation caused his incarceration constitute the 'special circumstances' which make it inequitable to award him attorneys' fees." *Id.* at 94.

In the second case, *United States v. 27.09 Acres of Land*, 43 F.3d 769 (2d Cir. 1994), the Second Circuit held that "special circumstances" warranted the denial of fees because the plaintiff intervenor was a "classic free-rider" that "achieved nothing but its own intervention"; its contributions "were marginal,

duplicative and unnecessary because of the laboring oar" taken by other parties. *Id.* at 771, 773-75.[14]

No doubt due to the defendant's extraordinary burden in demonstrating special circumstances – whether in the EAJA or ADA/section 1988 contexts – the Second Circuit has vacated the denial of fees for prevailing plaintiffs who have engaged in standard litigation tactics. *See, e.g., Vincent*, 651 F.3d at 305-06 (prevailing party attorney's litigation tactics do not constitute "special circumstances"); *Raishevich*, 247 F.3d at 346-47 (prevailing party's refusal to accept a settlement proposal is not a "special circumstance").

> **B.  By Failing to Raise the Issue, Stony Brook Did Not Satisfy Its Burden to Show "Special Circumstances," and the District Court Abused Its Discretion in Deciding the Issue *Sua Sponte***

Given the *strong presumption* in this civil rights case that the prevailing party be awarded fees, the "non-prevailing defendant bears the burden to make a *strong showing* that special circumstances warrant a denial of fees." *Hescott*, 757

---

[14] These two cases are distinguishable not only factually and procedurally, but also because the fee petitions therein were brought under the EAJA, the purpose of which it is "to deter the government from bringing unfounded suits or engaging in arbitrary or unjust administrative behavior." *Oguachaba v. INS*, 706 F.2d 93, 98 (2d Cir. 1983). This purpose is in contrast to that of the ADA and other civil rights statutes, which is to encourage members of the bar to serve as private attorneys general in bringing meritorious cases on behalf of civil rights plaintiffs. *See Raishevich*, 247 F.3d at 344. Also unlike civil rights statutes, the EAJA bars the award of fees to the prevailing party if "the position of the United States was substantially justified." 28 U.S.C § 2412(d)(1)(A).

F.3d at 523 (emphasis added). But here, Stony Brook never explicitly made a "special circumstances" argument. The closest that Stony Brook came was to posit that a fee award here "would be detrimental to the administration of justice," relying on unsupported assertions that Stony Brook was "caught in the middle of a dispute between [Sampson] and NBME," and that Sampson should have sued NBME earlier than it did. JA 576-579. The only legal authority Stony Brook cited in support of its "administration of justice" argument was *LaRouche v. Kezer*, 20 F.3d 68 (2d Cir. 1994). JA 576, 578. Nowhere in *LaRouche* is there any discussion of the "special circumstances" exception or of denial of a fee award based on equitable considerations. *See Sanchez*, 774 F.3d at 881 ("The two inquiries – prevailing-party status and special circumstances – are distinct.").

Consequently, Stony Brook cannot have met its burden to make a strong showing that the "special circumstances" exception applied here. Instead, the district court improperly relieved Stony Brook of its burden by raising and deciding the issue *sua sponte* in its order denying Sampson's fee petition. SPA 17-21. *See Hescott*, 757 F.3d at 523 (the district court abused its discretion in *sua sponte* denying fees based on "special circumstances" where the defendant had not argued that the exception applied**).**

### C. The District Court Abused Its Discretion by Relying on Two Clearly Erroneous Factual Findings in Concluding that "Special Circumstances" Were Present Here

Even assuming that the district court's *sua sponte* consideration of the "special circumstances" exception was proper, the court abused its discretion by relying on two clearly erroneous factual findings in concluding that the exception applied. *See Sanchez*, 774 F.3d at 884-85 (reversing denial of fees based on special circumstances when the district court's findings were unsupported by the record); *Vincent*, 651 F.3d at 303 (a district court abuses its discretion in the context of the "special circumstances" exception when its decision rests on "a clearly erroneous factual finding").

#### i. The Record Does Not Support the District Court's Finding that Stony Brook Was an Innocent Third-Party Caught in the Middle of a Dispute between Sampson and NBME

The district court found that Stony Brook was "an innocent third-party" that was "simply caught in the middle of a dispute between [Sampson] and NBME," and relied on this finding to conclude that the "special circumstances" exception applied here, citing *Annunziato v. The Gan, Inc*., 744 F.2d 244 (2d Cir. 1984). SPA 17-18.

*Annunziato v. The Gan, Inc*. is not analogous and does not support application of the "special circumstances" exception to this case. In *Annunziato*, the plaintiff residents objected to the closing of a public school by the defendant

city, and to the defendant city's sale of that school to co-defendant The Gan, a private entity which intended to use the facility as a Jewish day school. 744 F.2d at 245-46. The plaintiffs brought their action under 42 U.S.C. § 1983, claiming that the school's sale violated their constitutional rights and the Establishment Clause. 744 F.2d at 245. The parties eventually settled and signed a consent decree, and the district court ordered The Gan to pay a portion of the plaintiffs' fees. *Id.* at 248-49.

This Court reversed, concluding that The Gan could not be liable for fees under 42 U.S.C. § 1988 for the simple reason that it was not "subject to the court's jurisdiction under [42 U.S.C.] § 1983" because it was a private entity, not a state actor nor "a wrongdoer clothed with the authority of state law." 744 F.2d at 250-253 & n.3. In dicta, this Court noted that the "special circumstances" exception would *also* warrant reversal because "The Gan was blameless with respect to the action of the City of New Haven which was taken to serve its own purposes." *Id.* at 253. The Court noted that the plaintiffs' objectives "could have been achieved without the presence of The Gan in the litigation," especially since The Gan could not have been held liable under section 1983 because it was a private entity. *Id.* at 254.

Unlike The Gan, which had no liability under section 1983, Stony Brook, a public university, was properly sued by Sampson under Title II of the ADA. *See* 42 U.S.C. § 12132. JA 27-28. And Stony Brook is no "innocent third-party." It

discriminated against Sampson based on his disabilities, seeking to expel him from medical school before he had the opportunity to take Step 1 with necessary testing accommodations. JA 17-18, 20-21, 24-25 (¶¶46, 52, 62-71, 85, 92-95); JA 64, 66-68 (¶56, 70, 75, 78-82).

The Seven-Year Policy per its own terms did not even apply to Sampson because he was a joint MD/MBA student. JA 202 (§2.5.3). And even if the policy applied, Stony Brook had an obligation to modify its policies and academic requirements "to ensure that such requirements [did] not discriminate or have the effect of discriminating, on the basis of" Sampson's disabilities, including by modifying "the length of time permitted for the completion of [its MD] degree requirements." *See* 34 C.F.R. § 104.44(a); *see also Dean*, 804 F.3d at 182-88, 191 (reversing grant of summary judgment based on evidence that medical school discriminated against student by refusing to modify its policy relating to timing and opportunities to pass Step 1, where the student lacked sufficient time due to his disability to study for the exam). Despite being fully aware that Sampson needed testing accommodations in order to pass the Step exams, Stony Brook explicitly refused to make such modifications. Unlike the *Annunziato* plaintiffs, and as this Court recognized, Sampson could not have achieved his objective of finishing

medical school without suing Stony Brook. *See NBME*, 2023 U.S. App. LEXIS 10535 at **4-5 & n.3.[15]

The district court also improperly relied on two additional "facts" related to Stony Brook's purported status as an "innocent third" party. First, Stony Brook granted Sampson the testing accommodations he requested for medical school examinations. SPA 18. While true, Stony Brook was legally required to do so, as the same district judge's holding in the *NBME* case suggested. *See NBME*, 2022 U.S. Dist. LEXIS 217633 at **29, 63 (ordering NBME to provide identical testing accommodations to Sampson). And this fact is at best irrelevant because accommodations for medical school exams were not at issue in this case.

Second, Stony Brook purportedly "volunteered" to allow Sampson "to remain at the Medical School" before and during this litigation. SPA 18, 20. Stony Brook did not expel Sampson, but only because the district court repeatedly intervened, as when Stony Brook consented to a 60-day stay on Sampson's enrolled status at the Court's "instruction." *See supra* notes 9, 10. And Stony

---

[15] Stony Brook could have avoided being sued had it simply allowed Sampson to maintain inactive student status (at no cost to Stony Brook) while he sought testing accommodations from NBME. Again, the timing of the Step exams in relation to a medical school's MD program is determined by the medical school, not by NBME. JA 82 (¶11). And the Seven-Year Policy was not mandated by any licensing entity or accrediting body. JA 84 (¶18).

Brook repeatedly threatened Sampson's expulsion before and during this litigation. JA 20-21, 24-25 (¶¶62-71, 85-90, 92, 95); JA 63-64, 66-68 (¶¶50, 56, 70, 75, 78); JA 156-157; JA 376 (¶25); JA 321.

Finally, even if these or other actions by Stony Brook could be characterized as showing Stony Brook in a positive light, they would not constitute "special circumstances" making the award of fees unjust. *See Hescott*, 757 F.3d at 525 (facts showing that the defendant "acted in good faith" both prior to and during the litigation were not "special circumstances that would render a fee award unjust").

### ii. The Record Does Not Support the District Court's Finding that Sampson Did Not Take Legal Action Against NBME in a Timely Manner

The record also does not support the district court's finding that Sampson failed "to take legal action against NBME in a timely manner." SPA 18. In fact, this finding directly contradicts the same judge's finding on the same issue in the related *NBME* case. *See John Allan Co. v. Craig Allen Co., L.L.C.*, 540 F.3d 1133, 1139 (10th Cir. 2008) ("internally inconsistent findings constitute clear error").

In the order denying fees here, the district judge found that Sampson was "dilatory in commencing the NBME Action," relying on the timeline that led up to Sampson suing NBME (one month after he sued Stony Brook). SPA 19. But the same district judge in the related *NBME* case relied on the same timeline to find that Sampson's alleged delay in suing NBME was "slight." *NBME*, 2022 U.S. Dist.

~ 52 ~

LEXIS 217633 at *36. According to the same judge in that case, because in 2020 "Stony Brook allowed Sampson to proceed to this third year of medical school without first passing Step 1," he did not have an "immediate need to obtain accommodations from NBME." Consequently, the district judge found, "the correct point of reference" for analyzing Sampson's alleged "delay in seeking preliminary injunctive relief through" a lawsuit against NBME "is not NBME's first denial [of testing accommodations] in 2017, but rather NBME's denial of Sampson's most recent request for accommodations, which occurred in June 2022." *Id.* at *36.[16]

Moreover, after Sampson sued Stony Brook but before he sued NBME, the district judge in this case opined that it was advisable for Sampson to continue to seek a pre-litigation resolution with NBME given Sampson's most recent educational testing, which had been completed by a highly respected neuropsychologist. JA 410-412 (agreeing that Sampson should give NBME "a chance to review" such testing results "before you would file suit").

---

[16] The findings made by the district judge in the *NBME* case regarding this "delay" issue should be given greater weight than those made in the order denying Sampson's fees. In the related *NBME* case, the judge's conclusion that Sampson's alleged delay in suing NBME was "slight" was made after a three-day evidentiary hearing that resulted in nineteen pages of factual findings. *NBME*, 2022 U.S. Dist. LEXIS 217633 at **1-31. Here, the only fact-finding was in the order denying fees, which was not preceded by any hearing, much less any evidentiary hearing.

### D. It Was Error to Deny a Fee Award to Sampson Based on His Attempts to Resolve His Dispute with NBME Short of Litigation

Before Sampson filed suit against NBME, his counsel actively pursued obtaining Sampson's necessary testing accommodations from NBME, and were in direct communication with NBME's counsel to determine whether litigation was necessary. JA 68 (¶82). Efforts to resolve a legal dispute short of litigation cannot be considered anything like the sort of "extremely rare" circumstances that would warrant the denial of a fee award outright. *See Hescott*, 757 F.3d at 525 (denial of fees based on "special circumstances" should be "extremely rare"). Sampson did not engage in illegal misconduct, nor did he act as a "free rider." *Cf. Oguachuba*, 706 F.2d at 94 (illegal misconduct constituted "special circumstances"); *27.09 Acres of Land*, 43 F.3d at 773-75 ("classic free rider" situation constituted "special circumstances"). Quite the opposite – generally speaking, parties are encouraged to seek out-of-court resolution of their disputes. At the very worst, seeking such extrajudicial resolution would be analogous to protraction of litigation, or to a tactical litigation decision, both of which have been held not to be special circumstances. *See Jankey*, 537 F.3d at 1132 (in ADA case, "unreasonably prolonging a legitimate suit is a reason to reduce fees, not to deny them altogether"); *Vincent*, 651 F.3d at 305-06 (prevailing party attorney's "tactical" decisions did not constitute "special circumstances").

In asserting that "equitable considerations" relating to Sampson's alleged delay in suing Stony Brook meant that awarding fees "would be unjust," the district court relied on three cases. SPA 20. None support denial of fees here. The first two cases do not discuss, and are entirely unrelated to, the "special circumstances" exception. *See Dimartile v. Hochul*, 80 F.4th 443 (2d Cir. 2023); *Gierlinger v. Gleason*, 160 F.3d 858 (2d Cir. 1998). In the third case, *Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*, 2018 U.S. Dist. LEXIS 10593 (S.D.N.Y. Jan. 23, 2018), the district court concluded that the plaintiff was not a prevailing party entitled to a fee award. In dicta, the court found "a special circumstance" that would also warrant denial of fees: the fact that the plaintiff labor union had negotiated benefits and then sued the defendant employer over their lawfulness. *Id*. at *8. Nothing of the kind transpired here.

### E. It Was Contrary to the Policy Behind Civil Rights Fee-Shifting Statutes to Deny a Fee Award to Sampson

Significantly, Sampson's counsel achieved excellent results for their client in this case. *See Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."). The injunctive relief provided in the Stipulation and Order will allow Sampson to remain enrolled in medical school so that he can fulfill his dream of becoming a doctor – a result which the district judge found to be in the public interest. *See NBME*, 2022 U.S. Dist. LEXIS 217633 at **60-63. More than that, in obtaining for

him the injunctive relief he sought under the ADA, Sampson's counsel fulfilled their role as "private attorney[s] general." *See Riverside*, 477 U.S. at 575. The order denying Sampson's fee award petition is contrary to Congress's intent in enacting section 12205 to encourage members of the private bar to take up meritorious civil rights cases on behalf of persons with disabilities.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's order denying Sampson's fee petition and remand the case to the district court with instructions to award Sampson his reasonable attorneys' fees and costs, and to determine the reasonableness thereof, including fees and costs incurred in connection with this appeal. *See Sanchez v. City of Austin*, 774 F.3d 873, 885 (5th Cir. 2014) (awarding attorneys' fees and costs incurred in successfully prosecuting appeal from denial of fees).

Date: June 10, 2024

Respectfully submitted,
/s/ Bridget A. Clarke

Mary C. Vargas
Michael Steven Stein
STEIN & VARGAS, LLP
10 G Street NE, Suite 600
(240) 793-3185

Bridget A. Clarke
Andrew J. Dhuey
456 Boynton Avenue
Berkeley, CA 94707
(510) 528-7755

Charles Weiner
LAW OFFICE OF CHARLES WEINER
99 Lantern Drive, Suite 202
Doylestown, PA 18901
(267) 685-6311

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

This brief complies with: (1) the type-volume limitation of Fed. R. App. P. Rule 29(a)(5) and Local Rule 29.1(c) because it contains 13,514 words, excluding the parts exempted by rule; and (2) the typeface requirements of Fed. R. App. P. Rule 32(a)(5) and the type style requirements of Fed. R. App. P. Rule 32(a)(6) because the body of the brief has been prepared in 14-point Times New Roman font using Microsoft Word 2016.

Date: June 10, 2024                                    /s/ Bridget A. Clarke